Mᴀɴɴ Wʏᴀᴛᴛ Tᴀɴᴋsʟᴇʏ
201 E 1st Ave.
Hutchinson, KS 67501
(620) 662-2400
(620) 662-2443 (Fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Q.R. a minor, by and through his natural mother and next friend JANE DOE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 25 CV _____ |
| MULTI MEDIA LLC, | ) ) ) |
| and, | ) ) |
| JOHN DOE D/B/A CHATURBATE.COM, | ) ) |
| Defendants. | ) ) ) |

## **COMPLAINT**

For his cause of action against Defendants Multi Media LLC, and John Doe d/b/a chaturbate.com, Plaintiff Q.R., a minor, by and through his natural mother and next friend Jane Doe alleges and states:

## **Parties**

1. Plaintiff Q.R. ("Plaintiff") is a minor child who is domiciled in Olathe, Johnson County, Kansas. Plaintiff's claims in this matter are brought by and through his natural mother and next friend, Jane Doe, with whom he resides. At all times relevant to this Complaint, Plaintiff was physically present in the state of Kansas.

2.    Defendant Multi Media LLC ("Multi Media") is a commercial entity whose principal office is located at 23600 El Toro Road, #D344, Lake Forest, California 92630. Multi Media is incorporated in the state of California. At all times relevant to this Complaint, Multi Media owns and/or knowingly hosts chaturbate.com. Upon information and belief, Multimedia may be served with process through its registered agent, Registered Agents, Inc., 1401 21st Street, Suite R, Sacramento, CA 95811.

3.    Defendant John Doe d/b/a chaturbate.com ("John Doe"), is a commercial entity whose true identity is currently unknown. At all times relevant to this Complaint, John Doe owns and/or knowingly hosts chaturbate.com. Upon information and belief, John Doe may be served with process at any address identified during the course of discovery where they may be found to be conducting business.

## Jurisdiction and Venue

4.    This Court may properly exercise personal jurisdiction over all parties. This Court has subject matter jurisdiction over this case. Venue is proper in this forum.

### *Personal Jurisdiction*

5.    This Court has personal jurisdiction over Plaintiff as he is domiciled in Kansas.

6.    This Court may properly exercise personal jurisdiction over Multi Media and John Doe (collectively "Defendants") under K.S.A. § 60-308(b)(1)(A) as Defendants, at all times relevant to this Complaint, have engaged in business in the state of Kansas via consumer transactions. Defendants are further subject to this Court's jurisdiction pursuant to the Kansas Consumer Protection Act, specifically K.S.A. § 50-638(a).

7.    This Court may properly exercise personal jurisdiction over Defendants under K.S.A. § 60-308(b)(1)(B) as they have committed a tortious act within the State by allowing Plaintiff, who

is a minor, to access content that is harmful to minors without employing reasonable age verification as required by K.S.A. § 50-6,146.

8.   In the alternative of, or in addition to the above, this Court may properly exercise personal jurisdiction over Defendants under K.S.A. § 60-308(b)(1)(G)(i)-(ii) as Defendants caused an injury to Plaintiff, who is a minor, through an act or omission which took place outside of the state of Kansas while: (i) they were engaged in solicitation or service activities in the state of Kansas; and/or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed in the state of Kansas in the ordinary course of trade or use.

9.   This Court may properly exercise personal jurisdiction over Defendants under K.S.A. § 60-308(b)(1)(L) as Defendants maintain minimum contacts with Kansas such that maintaining this lawsuit does not offend traditional notions of fair play and substantial justice.

### *Subject Matter Jurisdiction*

10. This Court has subject matter jurisdiction over the cause of action under 28 U.S.C. § 1332(a) given the parties' diversity of citizenship and the fact that the amount in controversy exceeds $75,000.00.

11. This Court has subject matter jurisdiction over this case pursuant to the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.* because Defendants have engaged in consumer transactions in the state of Kansas.

### *Venue*

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 2255(c) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

**Background Facts**

13. Defendants intentionally operate a global network of live interactive webcam performers and internet sites, including chaturbate.com and numerous other websites, for which the video feeds linked by those sites originate from media servers operated and/or controlled by Defendants.

14. Chaturbate.com is a pornography website that knowingly shares or distributes material containing nudity, sexual conduct, sexual excitement and/or sadomasochistic abuse.[1] Such material appears on 25% or more of chaturbate.com's web pages when viewed on said website during any calendar month. This material is considered "harmful to minors" as, when taken as a whole, an average adult person and/or a reasonable person would find such material: (1) has a predominant tendency to appeal to a prurient interest in sex to minors; (2) is patently offensive to prevailing standards in the adult community with respect to what is suitable for minors; and (3) lacks serious literary, scientific, educational, artistic or political value for minors.

15. To illustrate this principle, Defendants describe the meaning of their website's name, Chaturbate, as "the act of masturbating while chatting online."

16. Chaturbate.com's Terms and Conditions describe the Platform as a "social networking" platform where individuals accessing the platform "may create and share with other Community Members online audio, video, interactive, and live content, which may include, at the providing Community Member's election, content of an adult nature."

17. In reality, Chaturbate operates as a commercial cam-site that actively invites and recruits' individuals to perform live, sexually explicit webcam shows for an online audience. The platform

---

[1] True and correct screen captures of Defendants' website http://www.chaturbate.com taken on Feb. 05, 2025, attached as Exhibit A and incorporated by reference herein, are subject to a pending Motion to Seal.

provides performers with technical infrastructure, including streaming tools, interactive chat, and site-issued virtual currency for receiving tips and payments directly from viewers.

18. Chaturbate is structured to monetize live adult performances. The site enables viewers to interact with performers in real time, purchase tokens to tip performers or purchase private shows, and provides performers with a direct share of the revenue generated from these activities.

19. The majority of shows broadcast on Chaturbate are produced by performers in their own homes or private locations, and are streamed in real time to a global audience. The platform's interface and search features are designed to prominently display live sexually explicit content to visitors and to encourage new user participation.

20. Chaturbate routinely promulgates and promotes live webcam performances and related content across affiliated and white-label websites for the purpose of attracting additional viewers and promoting its services. Chaturbate's terms and practices permit the redistribution of performer content to third-party sites for promotional and commercial purposes.

21. Chaturbate maintains direct commercial relationships with performers, controls the technical infrastructure required for live broadcasts, and determines the methods and scope of external promotion and redistribution of content.

22. Finally, at all times relevant to this Complaint, Defendants provided the technology and resources necessary to store and maintain the electronic files and applications associated with chaturbate.com on a computer server in order for it to be accessible via the internet.

***Defendants' Targeting of Kansas Citizens***

23.    Defendants do a substantial amount of business in Kansas through chaturbate.com as they engage in selling membership subscriptions to Kansas Citizens and directing advertisements to Kansas Citizens.[2]

24. Users can even search for state/province specific content, such as Kansas, on Defendant's website. See the below image taken from Defendants' website.



25. Furthermore, Defendants have expressly aimed chaturbate.com at Kansas Citizens such as Plaintiff.

26. Defendants have contracted with Cloudflare, a content delivery network ("CDN"), to enhance the speed and performance of chaturbate.com for users in and around Olathe, Kansas.

27. A CDN is a network of servers that cache content closer to a website's users, enabling faster and more reliable communication between a website and its end users despite the parties' geographic distance.[3] This network is organized into strategically placed points of presence ("PoPs") in high traffic internet areas worldwide. These PoPs house edge servers which deliver cached content to nearby users.[4]

---

[2] XBIZ, *Chaturbate Ad Network Offers Geo-Targeting*, https://www.xbiz.com/news/168582/chaturbate-ad-network-offers-geo-targeting (last visited Oct. 18, 2013).

[3] Cloudflare, *What Is a CDN?*, https://www.cloudflare.com/learning/cdn/what-is-a-cdn/ (last visited Dec. 18, 2024).

[4] CacheFly, *Why Points of Presence (PoPs) Are Pivotal for Optimal CDN Performance*, https://www.cachefly.com/news/why-points-of-presence-pops-are-pivotal-for-optimal-cdn-performance/#:~:text=Each%20PoP%20contains%20a%20group,deliver%20what%20you%20need%20quickly (last visited Dec. 18, 2024).

28. In simpler terms, a CDN replicates a website's original content and distributes these copies across its global network of PoPs. By placing these copies in edge servers geographically closer to users, a CDN significantly enhances speed, reliability, and the overall user experience for a website.

29. For websites hosting high-definition videos or streaming content, a CDN ensures efficient and uninterrupted playback for users near these edge servers. This service is critical for any website as users tend to drop off quickly when a website slows down.[5]

30. In the present case, Defendants have contracted with Cloudflare to cache and serve the content hosted on chaturbate.com through edge servers located in Kansas City, Missouri, less than 25 miles from Plaintiff's domicile.

31. Despite expressly aiming their website at Kansas citizens, Defendants have failed to ensure that chaturbate.com complies with Kansas law, which requires pornographic websites to employ age verification measures, either through a "commercially available database" that can verify age and identity, or "any other commercially reasonable method of age and identity verification." K.S.A. § 50-6,146(a)(1)-(2).

32. Defendants have not implemented reasonable age verification methods as mandated by K.S.A. § 50-6,146(a)(1)-(2) to verify the age of its end users on chaturbate.com. Instead, minors who visit the website are either immediately presented with sexual material harmful to minors with no form of verification needed, or they are simply asked to complete the trivial step of clicking an "I AGREE" button, which ostensibly verifies the user is over the age of 18. The age verification methods used by chaturbate.com cannot be said to verify anything at all, and wholly fail to comply

---

[5] Cloudflare, *What Is a CDN?*, https://www.cloudflare.com/learning/cdn/what-is-a-cdn/ (last visited Dec. 18, 2024).

with the requirements of Kansas law. See below for a true and correct image of chaturbate.com's inadequate age verification method as of November 21, 2024.



*Q.R.'s Access to chaturbate.com*

33. Q.R. is a 14-year-old minor child who is domiciled in Olathe, Kansas with his natural mother and next friend Jane Doe. Jane Doe has taken steps to monitor her son's devices for hardcore pornography as she recognizes the danger that such material poses to boys like Q.R. during this developmental stage of his life.

34. However, on August 12, 2024, Q.R. found Jane Doe's old laptop in her closet. She had stored the device there a couple of years ago after purchasing a new laptop and had since forgotten about it. Unfortunately for Q.R., it was still in working condition.

35. Q.R., using his mother's old laptop, had unfettered access to the internet and began searching for hardcore pornography.

36. Through this time, Q.R. was able to access chaturbate.com on thirty different instances:

    a.   two instances on August 12, 2024;

b.   one instance on August 14, 2024;

c.   four instances on August 18, 2024;

d.   two instances on August 19, 2024;

e.   one instance on August 29, 2024;

f.   seven instances on August 30, 2024;

g.   three instances on September 5, 2024;

h.   two instances on September 15, 2024;

i.   four instances on September 19, 2024;

j.   one instance on September 22, 2024;

k.   one instance on September 24, 2024; and

l.   two instances on October 2, 2024.

37.     Chaturbate.com had knowledge of Q.R.'s location when he accessed the platform, as their policies state: "When you use the Platform, we collect and process certain personally identifiable and other data about you....the Platform utilizes cookies and certain technology that tracks usage, performance, and your geographic location...."[6]

38.     Q.R. has been harmed by Defendants' own acts and/or omissions as they failed to employ age verification as mandated by Kansas Law on chaturbate.com.

39.     Chaturbate.com does not require users to provide an email address when creating an account. Indeed, Q.R. accessed Chaturbate.com without creating a user account.

40.     Chaturbate.com also claims to have a zero-tolerance policy against permitting minors on their platform and threatens to report minors to law enforcement if they are on their

---

[6] Terms and Conditions, Chaturbate, https://chaturbate.com/terms/ (last visited Jan. 13, 2025).

platform.[7] Chaturbate.com's own policies say that in order to access the platform, a user must be at least 18 years old or the age of majority in their jurisdiction, whichever is older.[8]

41.    Plaintiff was harmed as he was able to view content harmful to minors on Defendants' websites. Had Defendants employed reasonable age verification techniques, as required by Kansas law, Q.R. would not have been able to view such material.

### *Defendant's Purposeful Availment to Kansas Law*

42. Around January 1, 2025, after receiving notification from Plaintiff concerning the events laid out in this Complaint, in an effort to sustain their commercial operations in the state of Kansas, Defendants ostensibly employed age verification techniques that ask users for government issued ID.

43. When one user went to chaturbate.com, they were presented with the below image:



44. Once a user clicked "Complete Instant Verification" they were sent to a webpage depicted in the below image:

---

[7] Terms and Conditions, Chaturbate, https://chaturbate.com/terms/ (last visited Jan. 13, 2025).
[8] Terms and Conditions, Chaturbate, https://chaturbate.com/terms/ (last visited Jan. 13, 2025).



45. Once a user scanned the QR code with their mobile phone, their browser was directed to a webpage (pictured below) asking the user to scan some form of government issued ID to complete the process.



46. This subsequent effort to comply with Kansas law demonstrates that Defendants understand that they have purposefully availed themselves to Kansas jurisdiction. It further demonstrates that complying with K.S.A. § 50-6,146 during the times Plaintiff accessed chaturbate.com was possible and would have prevented Plaintiff's damages as he would have been unable to access their website.

## Count 1

### *Plaintiff Q.R.'s Claim Against Defendants Multi Media LLC and John Doe d/b/a chaturbate.com for Their Violations of K.S.A. § 50-6,146*

47. Plaintiff incorporates all the preceding paragraphs here by reference.

48. Defendants are commercial entities that knowingly share or distribute materials that are harmful to minors on chaturbate.com. In conjunction with this claim, or in the alternative, Defendants knowingly host chaturbate.com.

49. As such, under Kansas law, Defendants have a duty to verify that any person attempting to access chaturbate.com, who is a resident of Kansas or located in Kansas at the time of such attempted access, is 18 years of age or older.

50. Defendants failed to implement reasonable age verification methods regarding access to chaturbate.com as required by K.S.A. § 50-6,146(a)(1)-(2).

51. As Plaintiff, who is a resident of Kansas and was located in Kansas at all relevant times, was able to access chaturbate.com on thirty separate instances, Defendants are each liable for thirty separate violations of K.S.A. § 50-6,146.

52. Consequently, pursuant to K.S.A. § 50-6,146 Plaintiff prays for judgment against Defendants in an amount in excess of $75,000.00 for:

    a.  actual damages resulting from Q.R.'s access to material that is harmful to minors, including but not limited to past medical expenses, future medical expenses, past and future lost services and disability, past and future pain, suffering, and disability;

    b.  statutory damages in an amount not less than $50,000 per violation, regardless of whether any third-party content hosted by Defendants harmed Plaintiff;

    c.  reasonable attorney fees and costs of this action; and

    d.  for such other and further relief as this Court deems just and equitable.

**Count 2**

***Plaintiff Q.R.'s Claim Against Defendants Multi Media LLC and John Doe d/b/a chaturbate.com for Unconscionable Acts or Practices.***

53.     Plaintiff incorporates all the preceding paragraphs here by reference.

54.     For purposes of the remedies and penalties provided by the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, pursuant to K.S.A. § 50-6,146(d)(1), Defendants are deemed a supplier and Plaintiff is deemed a consumer.

55.     Defendants knowingly took advantage of Plaintiff's inability to reasonably protect his interests due to his age, limited knowledge of the internet, ignorance of available protections for minors, and inability to understand the terms and conditions of use. Defendants were aware that minors like Plaintiff may not understand the terms and conditions of their sites, the legal protections that should have been available to them, and/or the harm associated with viewing content that is harmful to minors.

56.     Despite this, Defendants shared, distributed, and/or knowingly hosted sexually explicit material on chaturbate.com, without implementing reasonable age verification methods restricting access to chaturbate.com as required by K.S.A. § 50-6,146(a)(1)-(2).

57. As Plaintiff, who is a resident of Kansas and was located in Kansas at all times relevant to this Complaint, was able to access chaturbate.com on thirty separate instances, Defendants have each committed thirty separate violations of K.S.A. § 50-6,146, which holds that each such violation is an unconscionable act or practice under the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*

58. As such, Defendants have each committed thirty separate violations of the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, including, but not limited to, violations of K.S.A. § 50-627.

59. Consequently, Plaintiff prays for a judgment against Defendants in an amount in excess of $75,000.00, for:

    a.   Damages, or civil penalties pursuant to K.S.A. § 50-636(a) of not more than $10,000 per violation of the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, whichever is greater, regardless of whether any third-party content hosted by Defendants harmed Plaintiff;

    b.   reasonable attorney fees and costs of this action pursuant to K.S.A. § 50-634(e); and

    c.   for such other and further relief as this Court deems just and proper.

## Count 3

### Plaintiff Q.R.'s Claim of Negligence Against Defendants Multi Media LLC and John Doe d/b/a chaturbate.com

60.    Plaintiff incorporates all the preceding paragraphs here by reference.

61.    At all times relevant to this complaint, Defendants owed a duty to Plaintiff to use that degree of care exercised by a reasonably careful designer, manufacturer, seller, distributor, and/or installer in the same business as Defendants.

62.    Plaintiff contends that Defendants are negligent and 100% at fault for Plaintiff's damages by failing to implement reasonable age verification methods on their website chaturbate.com so as to protect minors, such as Plaintiff, from accessing their content which is considered to be harmful to minors.

63.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue in the future to suffer the following damages:

    a.   Pain, suffering, disability, disfigurement, and mental anguish;

    b.   Psychological injury;

c.  Past and future loss of enjoyment and pleasure of living; and

d.  Past and future expenses of necessary medical care and treatment.

64.    All of Plaintiff's injuries, disabilities, infirmities, and damages are permanent, painful, and progressive in nature and extent.

65.    Consequently, Plaintiff prays for a judgment against Defendants in an amount in excess of $75,000.00, Plaintiff's costs incurred herein, and for such other and further relief as this Court deems just and proper.

## Count 4

### Plaintiff Q.R.'s Claim of Negligence Per Se Against Defendants Multi Media LLC and John Doe d/b/a chaturbate.com

66.    Plaintiff incorporates all the preceding paragraphs here by reference.

67.    Defendants have a duty to comply with Kansas Law.

68.    Defendants breached that duty by failing to implement reasonable age verification methods as required by K.S.A. § 50-6,146(a)(1)-(2).

69.    K.S.A. § 50-6,146 was enacted with the goal of protecting minors in Kansas from being harmed by content that is harmful to minors, such as hardcore pornography.

70.    Plaintiff, who is a minor, is therefore in the class of persons K.S.A. § 50-6,146 was intended to protect.

71.    Plaintiff's exposure to hardcore pornography on chaturbate.com and resulting damages are the type of harm K.S.A. § 50-6,146 was enacted to prevent.

72.    Accordingly, Defendants are negligent per se.

73.    As a direct and proximate result of Defendants' acts and omissions in this regard, Plaintiff has suffered and will continue in the future to suffer the following damages:

a.  Pain, suffering, disability, disfigurement, and mental anguish;

      b.   Psychological injury;

      c.   Past and future loss of enjoyment and pleasure of living; and

      d.   Past and future expenses of necessary medical care and treatment.

74.     All of Plaintiff's injuries, disabilities, infirmities, and damages are permanent, painful, and progressive in nature and extent.

75.     Consequently, Plaintiff prays for a judgment against Defendants in an amount in excess of $75,000.00, Plaintiff's costs incurred herein, and for such other and further relief as this Court deems just and proper.

## Count 5

### Plaintiff Q.R.'s Products Liability Claim Against Defendants Multi Media LLC and John Doe d/b/a chaturbate.com

76.     Plaintiff incorporates all the preceding paragraphs here by reference.

77.     Defendants are the manufacturers and/or sellers of chaturbate.com, which is a product under Kansas Product Liability Act and at all relevant times, was under Defendant's control.

78.     Plaintiff contends that chaturbate.com is a product based on the following:

      a.   Defendant Multi Media states on their corporate website "Our team has developed processes and *products* driving innovation."[9] (Emphasis added). Furthermore, in their "about us" section, they state "[w]e build powerful and sophisticated *products* for the experts in the [Chaturbate] community[.]"[10] (Emphasis added).

      b.   Defendant Multi Media's Head of Talent Acquisition Kseniia Ryabova has described her company's websites as being a product by stating: "I love that Multi

---

[9] Multimedia LLC, Homepage, https://multimediallc.com/ (last visited Jan. 13, 2025).

[10] Multimedia LLC, About us Page, https://multimediallc.com/about-us (last visited Jan. 13, 2025).

Media's culture encourages you to take ownership of those projects and impact the *product* that millions of people use daily."[11] (Emphasis added).

c.  Defendant Multimedia LLC's Design Lead Sharif Matar has described his company's websites as being a product by stating: "Whether through user research, feedback surveys, or one-on-one interviews, [Multi Media LLC] goes above and beyond to gather insights that inform the development of our *products*."[12] (Emphasis added).

d.  Chaturbate.com describes its website as a product throughout its privacy policy.[13]

79.  Defendants' product, chaturbate.com, is a danger and/or hazard to Minors. The research is overwhelming that exposure to content like that on Defendants' website is harmful to children in the following ways:

a.  Exposure to hardcore pornography disrupts the natural formation of children's sexual-arousal templates. In other words, it significantly impacts "the total constellation of thoughts, images, behaviors, sounds, smells, sights, fantasies, and objects that arouse [people] sexually."[14] The overwhelming majority of data supports the idea that a minor's sexual development can be significantly impacted by the minor's hardcore pornography viewing experiences."[15] Further, as scholars of behavioral neurobiology have noted, "It is becoming increasingly clear that there is a critical period of sexual behavior development that forms around an

---

[11] Multimedia LLC, Careers Page, https://multimediallc.com/careers (last visited Jan. 13, 2025).

[12] *Id.*

[13] Privacy Policy, Chaturbate, https://chaturbate.com/privacy/ (last visited Jan. 13, 2025).

[14] Patrick Carnes, David L. Delmonico, and Elizabeth Griffin, IN THE SHADOWS OF THE NET: BREAKING FREE OF COMPULSIVE ONLINE SEXUAL BEHAVIOR 58 (2nd ed. 2009).

[15] Emily F. Rothman, hardcore pornography AND PUBLIC HEALTH 139 (2021).

individual's first experiences with sexual arousal and desire, masturbation, orgasm, and sexual intercourse itself."[16] Thus, hardcore pornography exposure, particularly at a young age, is of great concern because of its ability to influence and shift the natural development of the sexual-arousal templates of minors.

b. Hardcore pornography exposure is associated with wide ranging attitudinal harms for children such as permissive sexual attitudes.[17]

c. Hardcore pornography exposure is associated with wide ranging behavioral harms for children such as: (1) early sexual debut,[18] which is associated with an increased risk of acquiring STIs[19] and unintended pregnancies which often results in adverse consequences for both mother and child;[20] (2) "casual" or "impersonal sex;[21] (3) condomless sex;[22] (4) a much greater number of lifetime sex partners;[23] (5) group

---

[16] James G. Pfaus, Tod E. Kippin, Genaro A. Coria-Avila, et al., *Who, What, Where, When (and Maybe Even Why)? How the Experience of Sexual Reward Connects Sexual Desire, Preference, and Performance*, 41 ARCHIVES OF SEXUAL BEHAVIOR 31-62 (2012), https://doi.org/10.1007/s10508-012-9935-5.

[17] The phrase "permissive sexual attitudes" is used widely within research literature on hardcore pornography to describe a range of receptive views toward casual, uncommitted sexual relations devoid of romantic attachments. *See* Jochen Peter and Patti M. Valkenburg, *Adolescents and hardcore pornography: A Review of 20 Years of Research*, 53 THE J. OF SEX RESEARCH, no.4-5, 2016, at 1–23, https://doi.org/10.1080/00224499.2016.1143441.

[18] Victor Strasburger, *Media Matter: But 'Old' Media May Matter More than 'New' Media*, 25 AM:STARS ADOLESCENT MEDICINE: STATE OF THE ART REVIEWS: SOCIAL NETWORKING & NEW TECHNOLOGIES, no. 3, 2014, at 643–669, https://doi.org/10.1542/9781581108927-media_matter.

[19] Theo G.M. Sandfort, Mark Orr, Jennifer Hirsch, et al., *LongTerm Health Correlates of Timing of Sexual Debut: Results from a National US Study*, 98 AM. J. OF PUB. HEALTH, no. 1, 2008, 155–161, https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2006.0 97444.

[20] Cheryl B. Aspy, Sara K. Vesely, Eleni L. Tolma, et al., *Youth Assets and Delayed Coitarche across Developmental Age Groups*, 30 THE J. OF EARLY ADOLESCENCE, no. 2, 2010, at 728, https://www.researchgate.net/publication/234074313_Youth_Assets_and_Delayed_Coitarche_Across_Development al_Age_Groups.

[21] Dolf Zillman and Jennings Bryant, *Effects of Prolonged Consumption of hardcore pornography on Family Values*, 9 J. OF FAMILY ISSUES 9, no. 4, 1988, at 521, https://doi.org/10.1177/019251388009004006.; Tokunaga, Wright, and Roskos, supra note 33.

[22] Robert S. Tokunaga, Paul J. Wright, and Laurens Vangeel, *Is hardcore pornography Consumption a Risk Factor for Condomless Sex?*, 46 HUM. COMM. RSCH. 278 (2020), https://doi.org/10.1093/hcr/hqaa005.

[23] A study found that young adults who had not viewed hardcore pornography were expected having 3.5 sexual partners in the next five years, while those who viewed hardcore pornography multiple times per day were expected to have 17 partners in the next five years. *See* Scott Braithwaite and Frank Fincham, *The Influence of hardcore*

sex;[24] (6) increased vulnerability to sexual assault;[25] (7) sex under the influence of substances;[26] (8) child on child harmful sexual behaviors;[27] and (9) prostitution and sex trafficking.[28]

     d.   Hardcore pornography addiction adversely impacts academic achievement.[29]

80.    Defendants know, or by the exercise of reasonable care, should know that their product is harmful to children. This is evidenced by the "NO ACCESS BY MINORS," provision in its terms of service.[30]

81.    Their terms and conditions include a "zero-tolerance stance on minors using or in any way appearing on the platform."[31]

82.    Additionally, K.S.A. § 50-6,146's passage and enactment puts Defendants on constructive and/or actual notice that their website is harmful to children, including Plaintiff.

---

[footnotes continued]

*pornography on Sexual Scripts and Hooking Up among Emerging Adults in College*, 44 ARCHIVES OF SEXUAL BEHAV., 111-23 (2015): https://doi.org/10.1007/s10508-014-0351-x.

[24] Emily F. Rothman, Michele R. Decker, Elizabeth Miller, et al., *Multi-person Sex among a Sample of Adolescent Female Urban Health Clinic Patients*, 89 J. OF URBAN HEALTH: BULLETIN OF THE N.Y. ACAD. OF MED., no. 1, 2011, at 129–137, https://doi.org/10.1007/s11524-011-9630-1.

[25] Maria Testa and Jennifer A. Livington, *Alcohol Consumption and Women's Vulnerability to Sexual Victimization: Can Reducing Women's Drinking Prevent Rape?*, 44 SUBSTANCE USE & MISUSE, 1349–1376 (2009):, https://www.tandfonline.com/doi/full/10.1080/10826080902961468; Lorraine Burke, Kate Dawson, William F. Flack, et al., *Alcohol, Drug Use, and Experiences of Sexual Violence Victimisation among First-year College Students in Ireland*, J. OF SEXUAL AGGRESSION (2023), https://doi:10.1080/13552600.2023.2216221.

[26] Debra K. Braun-Courville and Mary Rojas, *Exposure to Sexually Explicit Web Sites and Adolescent Sexual Attitudes and Behaviors*, 45 J. OF ADOLESCENT HEALTH, no. 2, 2009 at 156-162, https://doi.org/10.1016/j.jadohealth.2008.12.004.

[27] Rebecca Dillard, Kathryn Maguire-Jack, Kathryn Showalter, et al., *Abuse Disclosures of Youth with Problem Sexualized Behaviors and Trauma Symptomology*, 88 CHILD ABUSE AND NEGLECT, 201-11 (2019), https://doi.org/10.1016/j.chiabu.2018.11.019.

[28] Gert Martin Hald, Lisette Kuyper, Philippe, C.G. Adam, et al, *Does Viewing Explain Doing? Assessing the Association between Sexually Explicit Materials Use and Sexual Behaviors in a Large Sample of Dutch Adolescents and Young Adults*, 10 THE J. OF SEXUAL MEDICINE, no. 12, 2013, 2986-95, https://doi.org/10.1111/jsm.12157.

[29] Ine Beyens, Laura Vandenbosch, and Steven Eggermont, *Early Adolescent Boys' Exposure to Internet hardcore pornography: Relationships to Pubertal Timing, Sensation Seeking, and Academic Performance*, 35 THE J. OF EARLY ADOLESCENCE, no. 8, 2015, at 1045-1068, https://doi.org/10.1177/0272431614548069.

[30] Terms and Conditions, Chaturbate, https://chaturbate.com/terms/ (last visited Jan. 13, 2025).

[31] Terms and Conditions, Chaturbate, https://chaturbate.com/terms/ (last visited Jan. 13, 2025).

83.      Defendants know, or by the exercise of reasonable care, should know, that children access their website, chaturbate.com. Unfortunately, it is widely known that children are regular users of hardcore pornography websites with approximately 73% of children having *admitted* to viewing hardcore pornography as of 2022.[32]

84.     Indeed, Defendants are, or should be aware of this phenomenon. Chaturbate.com's terms of service has an entire subsection dedicated to forbidding minors to use its website, even addressing potential minor users directly, warning, "If you are a minor, you must immediately leave this site now. You are not legally permitted on Chaturbate for any reason, and if we find you on this site, we will report you to law enforcement as noted above. We will not reactivate you for any reason ever."[33]

85.     It is unreasonably dangerous for Defendants to provide this product which they know is harmful to children, that children are drawn to access, and do access, without employing reasonable age verification to prevent children, like Plaintiff, from accessing the website.

86.     Accordingly, Defendants have a duty under K.S.A. § 60-3305 to protect against a danger or hazard which could or did arise in the use or misuse of chaturbate.com.

87.     Defendants have breached this duty by failing to implement reasonable age verification methods on chaturbate.com as described in, and required by K.S.A. § 50-6,146(a)(1)-(2).

88.     Additionally, Defendants have a duty to warn against a danger or hazard which could or did arise in the use or misuse of chaturbate.com under K.S.A. § 60-3305.

---

[32] Michael B. Robb and Supreet Mann, *Teens & hardcore pornography*, COMMON SENSE MEDIA (Jan 10, 2023), https://www.commonsensemedia.org/research/teens-andhardcore pornography.

[33] While Defendants forbid minors users on their website, to the extent that this could be considered a "warning," Plaintiff would contend that it is unreasonable and inadequate given the circumstances. Namely, the allegedly "warning" does not warn minors of the dangers inherent to pornography use.

89.    Defendants have breached this duty by failing to warn Plaintiff of the foreseeable harms that would occur if Plaintiff accessed Defendants' website.

90.    As a direct and proximate result of Defendants' failure to warn and/or protect against a danger or hazard which could or did arise in the use or misuse of chaturbate.com. Plaintiff has suffered and will continue in the future to suffer the following damages:

      a.   Pain, suffering, disability, disfigurement, and mental anguish;

      b.   Psychological injury;

      c.   Past and future loss of enjoyment and pleasure of living; and

      d.   Past and future expenses of necessary medical care and treatment.

91.    All of Plaintiff's injuries, disabilities, infirmities, and damages are permanent, painful, and progressive in nature and extent.

92.    Consequently, Plaintiff prays for a judgment against Defendants in an amount in excess of $75,000.00, Plaintiff's costs incurred herein, and for such other and further relief as this Court deems just and proper.

### Demand for a jury trial

93. In accordance with applicable Kansas law, Plaintiff Q.R., by and through his natural mother and next friend, Jane Doe respectfully demands a trial by a jury of twelve persons of all issues raised in his Complaint.

      Dated: January 16, 2025

                              Respectfully submitted,

                              */s/ Joshua W. Ruhlmann*
                              Michael J. Wyatt        (#23260)
                              Joshua W. Ruhlmann      (#29778)
                              MANN WYATT TANKSLEY
                              201 E. 1st Ave.
                              Hutchinson, KS  67504-1202

(620) 662-2400
(620) 662-2443 (Fax)
mike@mannwyatt.com
josh@mannwyatt.com

and

Danielle Pinter*
Benjamin W. Bull*
Christen M. Price*
Victoria Hirsch*
Khari James*
NATIONAL CENTER ON
SEXUAL EXPLOITATION
1201 F St., NW, Suite 200
Washington, DC 20004
P: 202-393-7245
E: dpinter@ncoselaw.org
bbull@ncose.com
cprice@ncoselaw.org
vhirsch@ncoselaw.org
kjames@ncoselaw.org

*Pro hac vice motions forthcoming

Attorneys for Plaintiff