IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | |
|---|---|
| Q.R., a minor, by and through his Natural mother and next friend, JANE DOE, <br><br>        Plaintiff, <br><br>v. <br><br>MULTI MEDIA LLC, et al., <br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) )    Case No. 25-CV-01094-HLT-BGS |

## DEFENDANT MULTI MEDIA LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO COMPEL ARBITRATION

Plaintiff's claims against Defendant Multi Media LLC ("Multi Media") – which are based on him allegedly accessing the chaturbate.com website platform ("Platform") – are subject to binding arbitration before the American Arbitration Association. Multi Media respectfully requests that the Court dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) in that Plaintiff's claims are subject to binding arbitration[1] or, alternatively, compel Plaintiff to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

---

[1] "A party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party 'has failed to state a claim.'" *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) (quoting *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014)); *see also*, *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1292 (10th Cir. 2004) (holding complaint must be dismissed where claims must be arbitrated). The Supreme Court has recently clarified, however, that a party is entitled to a stay pending arbitration, rather than dismissal, if so requested. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); *Kansys Staffing Grp., LLC v. QRails, Inc.*, No. 24-2176-DDC-TJJ, 2025 WL 306110, at *8 (D. Kan. Jan. 27, 2025) ("The FAA provides that once the court is 'satisfied' that the issues are arbitrable and one of the parties has asked for a stay, the court must stay the action."). If Plaintiff does not request a stay in response to this motion, there is no barrier to dismissal.

## STATEMENT OF FACTS

Plaintiff, a minor, alleges through his natural mother that he accessed the Platform, which is operated by Multi Media, on various dates during a two-month period from August 12, 2024 to October 2, 2024. ECF Doc. 1 ¶ 36. However, August 12, 2024 was not Plaintiff's first attempted visit to the Platform. The Platform's logs show that Plaintiff attempted to visit the website on an earlier date, June 14, 2024, and – more importantly for purposes of this motion – in his efforts to access the Platform at that time, Plaintiff completed the account signup process, including an express acceptance of the Platform's "Terms & Conditions." Exhibit 1, Declaration ¶¶ 8-13. To create his account, Plaintiff filled in the following form, including selection of a username (w****f)[2] and password, provision of his email address r***********9@gmail.com (which contains Q.R.'s name in last name, first name format), and inputting a false birth date (March 8, 1995):



---

[2] Plaintiff's selected username and his provided email address have been redacted for privacy protection but can and will be provided to opposing counsel or the Court upon request.

*Id.* ¶ 9. Additionally, Plaintiff selected the checkboxes next to "I have read and agree to the terms and conditions" and "I have read and agree to the privacy policy" before clicking the "Create Free Account" button. *Id.* ¶¶ 11-13. After doing this, Plaintiff's user account was successfully created and the Platform indicates that a computer device with a User Agent string of "Mozilla/5.0 (X11; CrOS x86_64 14816.131.0) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/103.0.0.0 Safari/537.36" was used during this process. *Id.* ¶¶ 8, 13.

The evidence overwhelmingly demonstrates that Plaintiff was the person who created the account given that (1) the email address provided in the new user account form matched Q.R.'s name, (2) the Platform also registered attempted visits to the Platform by a computer device with the same operating system version, same processor, and exact same browser software on each and every occasion Q.R. attempted to visit the Platform that Plaintiff's counsel identified to Multi Media's counsel prior to filing this lawsuit, and (3) each of these attempts also used an IP address owned by AT&T Internet and geolocated to Olathe, Kansas. *Id.* ¶¶ 8-10, 15. Further, the evidence overwhelmingly demonstrates that Plaintiff selected the checkboxes because his account was created successfully and that would not have occurred unless he had selected the checkboxes labeled "I have read and agree to the terms and conditions" and "I have read and agree to the privacy policy." *Id.* ¶ 13.

The words "terms and conditions" on this account creation pop-up box are highlighted in blue which indicates these words contain a hyperlink. When a user clicks on the words "terms and conditions" that appear in this pop-up box, the user is then directed to, and shown, the Platform's

"Terms & Conditions" (https://chaturbate.com/terms/). *Id.* ¶¶ 9, 12. The Terms page is shown as follows:



*Id.* ¶ 12 & Exhibits B, C.

Section IX(g) of the Platform's Terms contains an arbitration provision specifying that "any dispute relating to or arising out of" use of the Platform "will be resolved by binding individual arbitration." *Id.* ¶ 12 & Exhibit B at 13 & Exhibit C at 6. The arbitration provision further states that the arbitration will be conducted by the American Arbitration Association ("AAA") in accordance with its rules. *Id.*

For his part, Plaintiff acknowledges in his Complaint that the Platform contained a pop-box which requires a user to click "I AGREE" to continue on the Platform beyond the blurred screen. ECF Doc. 1 ¶ 32. Plaintiff does not state in his Complaint whether or not he clicked "I AGREE". However, Plaintiff alleges that "he was able to view content harmful to minors" on the Platform. ECF Doc. 1 ¶ 41. Multi Media's Chief Technical Officer has confirmed that the Platform does not allow access beyond the initial "I AGREE" pop-up box and blurred background,

both of which have been features of the Platform since 2011, unless the user has clicked "I AGREE." Exhibit 1, Declaration ¶¶ 4-5. Clicking the "I AGREE" button on this pop-up box also affirmatively demonstrates a user's acceptance of the Platform's Terms, the text of which includes the following statement: "I understand that my use of this website is governed by the website's Terms which I have reviewed and accepted, and I agree to be bound by such Terms." *Id*. ¶¶ 6, 7.

Plaintiff's Complaint alleges that the initial "I AGREE" pop-up box alone is an "inadequate age verification" method, that he was able to access the Platform beyond the initial pop-up box, and that the subsequent pop-up box for age verification was not implemented until "[a]round January 1, 2025." ECF Doc. 1 ¶¶ 32, 36, 42-45. The allegation that between August 12, 2024 and "[a]round January 1, 2025" the Platform lacked a reasonable age verification method is central to each of Plaintiff's theories of liability. ECF Doc. 1 ¶¶ 50, 56, 62, 68, 85. Multi Media vehemently denies these allegations and intends to prove unequivocally at arbitration that, as Plaintiff's counsel was informed months prior to initiating this action, Multi Media at all relevant times maintained a legally required age verification method[3] *and* that this method specifically prevented Plaintiff from accessing any adult content on its site. Exhibit 1, Declaration ¶¶ 14-16. However, any dispute over these facts is irrelevant to this Motion because Plaintiff agreed to have such disputes resolved by binding arbitration.

---

[3] Multi Media implemented the age verification element for any user who arrives at the Platform from an IP address that is geolocated in Kansas, and who has not previously been verified as an adult prior to April 25, 2024. Kansas SB 394 became law on April 25, 2024. *See* SB 394, https://kslegislature.gov/li_2024/b2023_24/measures/sb394/. The effective date of the law was the date "from and after its publication in the statute book." *See* SB 394, § 2, https://kslegislature.gov/li_2024/b2023_24/measures/documents/sb394_enrolled.pdf. According to Westlaw, K.S.A. 50-6,146 (the codification of SB 394) is effective July 1, 2024.

# ARGUMENT

I. ***Plaintiff Agreed to The Arbitration Provision in the Platform's Terms.***

A court may dismiss a complaint in favor of arbitration or compel arbitration "only when satisfied that the making of the agreement to arbitrate is not at issue." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (citation and quotation omitted). To form a contract under Kansas law,[4] "the parties must each accept the essential terms of the contract and outwardly communicate that acceptance in a way reasonably intended to be understood as such." *Duling v. Mid Am. Credit Union*, 63 Kan. App. 2d 428, 436, 530 P.3d 737, 744 (2022) (citing *Southwest & Assocs. Inc. v. Steven Enterprises*, LLC, 32 Kan. App. 2d 778, 781, 88 P.3d 1246 (2004); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) ("Acceptance is measured not by the parties' subjective intent, but rather by their outward expressions of assent.")).

While it appears no Kansas state court has analyzed contracts formed online, *Bretto v. AMC Ent. Holdings, Inc.*, 748 F. Supp. 3d 1036, 1044 (D. Kan. 2024), considered guidance from other courts that "elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2022)). Online

---

[4] The evidence shows Plaintiff was in Olathe, Kansas when he agreed to the Platform's terms and created a user account. Exhibit 1, Declaration ¶¶ 8, 10. Also, Plaintiff's Complaint alleges that he was in Kansas "at all relevant times" when he claims to have accessed the Platform (to which clicking on "I AGREE" was one prerequisite). ECF No. 1 ¶¶ 33-36, 51. Thus, Kansas law applies because the last act necessary for formation of the contract is alleged to have occurred in Kansas. *Novak v. Mut. of Omaha Ins. Co.*, 29 Kan. App. 2d 526, 534, 28 P.3d 1033, 1039 (2001) ("Kansas applies the *lex loci contractus* doctrine and applies the law of the state where the contract is made. A contract is made where the last act necessary for its formation occurs."); *Alexander & Alexander, Inc. v. Feldman*, 913 F. Supp. 1495, 1500 (D. Kan. 1996) (federal court in diversity action must apply substantive law of the forum state).

agreements which are based on the user clicking "I agree" after being presented with the terms and conditions, often categorized as "clickwrap," are generally found enforceable because they require express assent from the user.[5] *Bretto*, 748 F. Supp. 3d at 1044 (citations omitted); *see also*, *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1257 (10th Cir. 2012) ("U-verse customers are given notice of the U-verse terms and must affirmatively manifest assent to the terms by clicking 'I Acknowledge' and 'I Agree' buttons. . . . We see no reason that such clickwrap agreements would not be valid and enforceable under Florida and Oklahoma law."); *Wakeman v. Uber Techs., Inc.*, 721 F. Supp. 3d 1191, 1196 (D. Kan. 2024) (finding contract was formed where plaintiff "accepted Uber's offer of said Terms as clickwrap in the Uber app").

In this case, the only plausible conclusion from the evidence is that, by selecting the checkbox labeled "I have read and agree to the terms and conditions" when creating an account on the Platform, Plaintiff objectively manifested acceptance of the agreement which included the arbitration provisions on the Terms page. Exhibit 1, Declaration ¶¶ 8-13. Moreover, Plaintiff's Complaint itself identifies a pop-up box, and clicking the "I AGREE" button on that pop-up box also affirmatively demonstrates a user's acceptance of the Platform's Terms, the text of which includes the following statement: "I understand that my use of this website is governed by the website's Terms which I have reviewed and accepted, and I agree to be bound by such Terms."

---

[5] This contrasts with a different type of online agreement (not at issue here) categorized as "browsewrap" which simply identifies terms and conditions at the bottom of the screen. *Bretto*, 748 F. Supp. 3d at 1044 (citations omitted). "Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). In those circumstances, courts evaluate "whether the website has provided reasonably conspicuous notice" of its terms. *Bretto*, 748 F. Supp. 3d at 1045 (citations omitted). Such an evaluation is unnecessary here because the Platform requires the user to click "I have read and agree to the terms and conditions" before an account can be created on the Platform (or to click "I AGREE" before accessing the Platform).

ECF Doc. 1 ¶ 32; Exhibit 1, Declaration ¶¶ 4-7. Further, Plaintiff's status as a minor did not prevent the making of the agreement when Plaintiff selected "I have read and agree to the terms and conditions" (or clicked "I AGREE"). K.S.A. 38-102 ("a minor is bound not only by contracts for necessaries, but also by the minor's other contracts, unless the minor disaffirms them within a reasonable time after the minor attains the minor's majority"); *State v. Bishop*, 44 Kan. App. 2d 739, 745, 240 P.3d 614, 618 (2010) ("contracts are enforceable against minors but voidable if the minor disaffirms the contract as provided by the statutes"); *State v. Weatherwax*, 12 Kan. 463, 464 (1874) ("Under this statute a minor's contract is never void, unless it is void for some other reason than for minority. For minority, merely, it can never be more than voidable, and even then it is valid unless disaffirmed within a reasonable time after majority.") Thus, the making of an agreement to arbitrate is not at issue in this case.

## II. *The Parties Agreed to Submit Issues of Arbitrability to the Arbitrator.*

No remaining issues need to be decided for the Court to dismiss Plaintiff's Complaint or to compel arbitration of Plaintiff's claims because the parties here agreed to submit all issues of arbitrability to the arbitrator. When the parties disagree about whether they agreed to arbitrate the merits of a particular dispute, that disagreement is about the "arbitrability" of the dispute. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Parties to an arbitration agreement may provide that the arbitrator, not the court, shall determine what issues are arbitrable. *See id*. (stating that "who has the primary power to decide arbitrability turns upon what the parties agreed about that matter" (internal citations omitted)); *Rent-A-Center West, Inc. v. Jackson*, 563 U.S. 63, 70 (2010) ("An agreement to arbitrate [arbitrability] is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). If the contract provides "clear and unmistakable" evidence that the parties intended to delegate arbitrability decisions to an arbitrator,

the court must dismiss or stay the action pending a determination of arbitrability by the arbitrator. *See First Options*, 514 U.S. at 944 (stating that, when the parties clearly and unmistakably agree to submit arbitrability decisions to arbitration "a court must defer to an arbitrator's arbitrability decision"). "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

Here, Section IX(g) of the Platform's Terms contains an arbitration provision specifying "any dispute relating to or arising out of" use of the Platform "will be resolved by binding individual arbitration . . . conducted by the American Arbitration Association (AAA) under its rules." Exhibit 1, Declaration ¶ 12 & Exhibit B at 13 & Exhibit C at 6. In turn, Rule R-7(a) of the AAA Consumer Arbitration Rules, expressly incorporated into the agreement pursuant to the quoted language above, provides that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Exhibit 2, AAA Consumer Arbitration Rules, Rule R-7, https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf. Similarly, Rule R-7(b), also incorporated in the agreement, provides: "[T]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not, for that reason alone, render invalid the arbitration clause." *Id*. The rules make clear that any dispute over the scope of the arbitration clause or the arbitrator's jurisdiction in a dispute under the AAA Consumer Arbitrator Rules is for the arbitrator to decide.

Courts have repeatedly held that when an arbitration agreement incorporates by reference rules which give the arbitrator the power to rule on arbitration jurisdiction, the parties have "clearly and unmistakably agreed to arbitrate arbitrability." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281, 1283 (10th Cir. 2017) (parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules"; "all of our sister circuits to address the issue have unanimously concluded that incorporation of the substantively identical (as relevant here) AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability") (citations omitted); *Wakeman v. Uber Techs., Inc.*, 721 F. Supp. 3d 1191, 1197 (D. Kan. 2024) (finding AAA Consumer Arbitration Rules "unmistakably state that the arbitrator decides questions of arbitrability").

Accordingly, the incorporation of the AAA rules into the Platform's Terms constitutes "clear and unmistakable" evidence that the parties agreed to delegate arbitrability to the arbitrator. Thus, any argument that this case is not a "dispute relating to or arising out of [Plaintiff's] use of the Platform" must be decided by the arbitrator. Further, any claim by Plaintiff that his status as a minor permits him to disaffirm the contract pursuant to K.S.A. 38-102 must also be decided by the arbitrator. *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837-38 (7th Cir. 2022) (finding minor's disaffirmance defense was for the arbitrator to resolve); *I.C. v. StockX, LLC*, 19 F.4th 873 (6th Cir. 2021) (finding infancy defense is for an arbitrator to decide).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss this case for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) in that Plaintiff's claims are subject to binding arbitration or, alternatively, compel Plaintiff to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

Dated: June 23, 2025

Respectfully submitted,

GM LAW PC

By: _/s/ Jason M. Hans_
    Jason M. Hans    KS #18881
    1201 Walnut Street, 20th Floor
    Kansas City, MO 64106
    Telephone:  (816) 471-7700
    Facsimile:  (816) 471-2221
    jasonh@gmlawpc.com

WAYMAKER LLP
    Jaime W. Marquart (application for pro hac vice admission forthcoming)
    515 S. Flower Street, Suite 3500
    Los Angeles, CA 90071
    Office: 424.652.7800
    Fax: 424.652.7850
    jmarquart@waymakerlaw.com

ATTORNEYS FOR DEFENDANT
MULTI MEDIA LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of June, 2025, a true and correct copy of the foregoing was electronically filed via the Court's electronic filing system which will serve notice of same to all counsel of record.

    _/s/ Jason M. Hans_