MANN WYATT TANKSLEY
201 E. 1st Avenue
Hutchinson, KS 67501
(620) 662-2400
(620) 662-2443 (Fax)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Q.R. a minor, by and through his natural mother and next friend JANE DOE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 6:25-cv-01094 ) |
| MULTI MEDIA LLC, | ) ) |
| and, | ) ) |
| JOHN DOE D/B/A CHATURBATE.COM, | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO COMPEL ARBITRATION**

This is Plaintiff Q.R.'s response in opposition to Defendant MultiMedia LLC's ("Defendant") Motion to Dismiss and Memorandum in Support ("Defendant's Motion"), brought by and through his natural mother and next friend, Jane Doe. The issues before this Court are straightforward:

1. **Did Plaintiff agree to arbitrate his claims?** The answer is no. Defendant contends that a 14-year-old minor entered into a binding contract in exchange for access to chaturbate.com, a pornographic website. However, any such agreement would be void as it directly violates Kansas law, undermines clearly established public policy, and fails to meet basic requirements of contract formation. Thus, as no valid or enforceable agreement exists, arbitration cannot be compelled.

2. **Can the arbitration provision be enforced against Plaintiff?** The answer is no. Even assuming arguendo that a valid or enforceable agreement exists, Kansas law holds that Plaintiff has voided the agreement by filing this action. Furthermore, Kanas public policy disfavors binding minors to agreements that restrict access to judicial remedies. Thus, any alleged agreement cannot be enforced.

3. **Before compelling arbitration, should this Court first determine if an enforceable agreement exists?** The answer is yes. Courts may not compel arbitration unless they are first satisfied that a valid agreement exists. That threshold question must be resolved by this Court before compelling arbitration on any issue including arbitrability. In making their arguments, Defendant improperly assumes that a valid and enforceable agreement to arbitrate exists and asks this Court to gloss over its threshold obligations. This cannot stand. Defendant's request must be denied.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**I.    Introduction.**

In the present case, Defendant contends that Plaintiff agreed to an arbitration provision found in chaturbate.com's Terms and Conditions ("Chaturbate's Terms") and has thereby waived his right to litigate this matter. That argument fails for multiple independent reasons: (1) any alleged agreement is void because it is illegal and violates Kansas public policy; (2) no valid or enforceable contract was ever formed; and (3) even if an agreement exists, Plaintiff has disaffirmed it by filing this action. While Defendant insists that these issues must be decided by an arbitrator, that position presupposes the existence of a valid agreement, which is an issue that must be resolved by this Court.

**II.   Any Alleged Agreement Between Plaintiff and Defendant for Access to Chaturbate.com is Illegal, Contrary to Kansas Public Policy, and Therefore Void.**

As with any contract, arbitration agreements are subject to "generally applicable contract defenses." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Accordingly, federal courts will interpret arbitration agreements using applicable state contract law. *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010). Under Kansas law, "contracts that are illegal

or that violate public policy are void and unenforceable." *Varney Bus. Servs. v. Pottroff*, 275 Kan. 20, 39, 59 P.3d 1003 (2002). An illegal contract is "a promise that is prohibited because the performance, formation, or object of the agreement is against the law." *Petty v. City of El Dorado*, 270 Kan. 847, 853, 19 P.3d 167 (2001). The party asserting illegality can meet their burden by simply demonstrating the contract directly violates a law.

For instance, in *Bradley v. Minor*, the Kansas Supreme Court held a real estate contract was void and unenforceable as the seller and buyer had entered into a side agreement which violated federal loan program regulations. 173 Kan. 236, 239, 245 P.2d 1206 (1952). There, the plaintiff sough specific performance of an options contract where the parties had inflated a stated purchase price by merely $60 to cover the cost of title insurance, despite regulations requiring the contract list the full and actual purchase price and prohibiting any such side agreements to alter it. *Id*. at 238. The plaintiff argued the contract should still be enforced because the inflated amount was accurately reflected in the written agreement and was the agreed upon amount. *Id*. at 239. The court disagreed, instead relaying the dispositive inquiry was whether the agreement constituted an act that was prohibited by law. *Id*. The court found that performance of the contract was in direct contravention of federal law and dismissed the action, stating: "no action can be maintained, either at law or in equity, upon any contract or agreement made in violation of law." *Id*.

Illegality may also be shown through a contract's conflict with public policy. Public policy is defined as the law of a state "as found in its constitution, its statutory enactments, and its judicial decisions." *Zimmerman v. Brown*, 49 Kan. App. 2d 143, 156, 306 P.3d 306 (2013). For instance, in *City of El Dorado v. Petty*, the Kansas Supreme Court voided a provision in a DUI diversion agreement that required the defendant to serve jail time, holding that it violated the Kansas legislature's intent to make diversion a rehabilitative alternative to incarceration. 270 Kan. 847,

Page 3 of 14

848, 19 P.3d 167 (2001). Although the City argued it had discretion to impose such a term, the Court relayed that statutory diversion agreements must reflect legislative intent. *Id*. at 852. Based on the text of diversion statute, it was clear that the legislature intended diversion to be a means to avoid a judgment of criminal guilt. *Id*. at 853. Thus, the Court concluded any contract provision that contravenes that intent must be stricken. *Id*. at 854.

In the present case, Defendant contends that Plaintiff, a 14-year-old minor, entered into an agreement requiring him to arbitrate his claims in exchange for access to Defendant's website. Doc. 20, Defendant's Motion, at p. 2. However, any such agreement would be void, as it was made in direct violation of Kansas law and is contrary to Kansas public policy.

### a. The Alleged Agreement Directly Violates K.S.A. § 21-6401 and K.S.A. § 50-6,146.

K.S.A. § 21-6401 criminalizes "the transmitting, publishing, distributing, presenting, exhibiting or advertising any obscene material" to a "child under the age of 18 years." *Id*. § 21-6401(a)-(b). The term "material" includes digital media that is transmitted to another person. *State v. Johnson*, 56 Kan. App. 2d 1293, 447 P.3d 1010, 2019 Kan. App. LEXIS 41 (Kan. Ct. App. 2019). Per the statute, material is considered "obscene" if:

> (A) The average person applying contemporary community standards would find that the material or performance, taken as a whole, appeals to the prurient interest;
> (B) the average person applying contemporary community standards would find that the material or performance has patently offensive representations or descriptions of:
> > (i) Ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse or sodomy; or
> > (ii) masturbation, excretory functions, sadomasochistic abuse or lewd exhibition of the genitals; and
> (C) taken as a whole, a reasonable person would find that the material or performance lacks serious literary, educational, artistic, political or scientific value;

K.S.A. § 21-6401(f)(1)(A)-(C).

Disseminating such content to minors is a Class A misdemeanor and a felony upon subsequent conviction. *Id*. § 21-6401(c)(2).

Additionally, K.S.A. § 50-6,146, imposes a duty on commercial entities whose websites contain such content to verify the age of users located in Kansas. The statute explicitly prohibits allowing access to such material without confirming the user is 18 or older through a commercially reasonable age-verification method.

Here, Plaintiff alleges that Defendant owns and operates chaturbate.com, a commercial pornographic website featuring live, interactive webcam performances involving sexually explicit content, including nudity, sexual conduct, and sadomasochistic material. Doc. 1, Plaintiff's Complaint, at ¶¶ 12–14. As Plaintiff notes, the name "Chaturbate" combines "chat" and "masturbate," demonstrating the website's core function: allowing users to masturbate to, and engage in live chats with, performers broadcasting explicit sexual content. *Id*. at ¶¶ 15–17. Indeed, users who access the site are invited to "chaturbate" with performers engaged in live or pre-recorded showings bearing titles such as: "domi deep in pussy," "fill my pussy with a big load," "cum play," "cum show with dildo," "epic squirts," and "deep throat dildo." *See* Doc. 1-1, Pl.'s Ex. A to Plaintiff's Complaint, at pp. 1–4. Chaturbate's Terms confirm this reality, stating: "When you access [chaturbate.com], you understand that you may see and/or receive messages, solicited and unsolicited, containing graphic depictions of nudity, exposed genitals and adults engaged in explicit sexual activity consisting of adults of different genders, adults of the same gender, as well as sexual acts involving more than 2 adults." Doc. 20-1, Ex. 1B to Defendant's Motion, at p. 2.

Clearly, Defendant's website engages in the transmitting, publishing, distributing, presenting, exhibiting and/or advertising of obscene material. Furthermore, Plaintiff has alleged that such material was transmitted to a minor, who at no point was required to submit to

commercially reasonable age verification methods.[1] Accordingly, any contract formed based on Plaintiff's use of, or right to use chaturbate.com directly contravenes K.S.A. § 21-6401 and K.S.A. § 50-6,146. Thus, as in *Bradley*, this Court should find **"no action can be maintained, either at law or in equity, upon any contract or agreement made in violation of law"** and DENY Defendant's Motion.

### b. The Alleged Agreement Violates Kansas Public Policy as Established by K.S.A. § 50-6,146.

On April 2, 2024, the Kansas Legislature passed Senate Bill 394, which became law without the Governor's signature on April 25, 2024. The statute took effect on July 1, 2024, and was codified as K.S.A. § 50-6,146. This law requires commercial websites that distribute material harmful to minors to verify the age of users before granting access. Kansas joined a growing number of states enacting similar laws to address the proliferation of online pornography and its accessibility to children. *See Free Speech Coal., Inc. v. Paxton*, No. 23-1122, 2025 U.S. LEXIS 2497, at 8 (June 27, 2025).

On June 27, 2025, the United States Supreme Court upheld the constitutionality of Texas's age-verification statute, confirming that such laws advance an important state interest: protecting minors from exposure to sexually explicit content. *Id.* at 39, 44. The Court further recognized that this interest likely rose to the level of "compelling." Even in dissent, Justice Kagan agreed: "No one doubts that the distribution of sexually explicit speech to children, of the sort involved here, can cause great harm. Or to say the same thing in legal terms, no one doubts that States have a compelling interest in shielding children from speech of that kind." *Id.* at *44*.

---

[1] In light of Defendant's vehement denials of factual matters alleged in Plaintiff's Complaint, Plaintiff would remind them when ruling on a 12(b)(6) motion, this Court must "accept as true" the factual allegations alleged by Plaintiff and view them "in the light most favorable" to Plaintiff. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

Against this backdrop, Defendant now argues that a minor can legally enter into a contract granting him access to pornographic content and, in doing so, waive his right to litigate his claims arising from that access. This argument cannot stand. If commercial pornographic websites could bind minors simply by having them click "I agree" to a set of terms and conditions in exchange for access, K.S.A. § 50-6,146 and the public policy it reflects, would be rendered meaningless. The whole point of such laws is to prevent minors from accessing this material in the first place, not to allow that access to become the foundation of a binding contract.

Because Kansas has enacted public policy serving their compelling interest in protecting children from harmful pornographic content, and because the alleged agreement here directly contravenes that interest, any such agreement must be deemed void against public policy. Accordingly, this Court should DENY Defendant's Motion.

## III.    No Enforceable Contract was Ever Formed.

Contract law in Kansas is straightforward. Like many states, to be enforceable, each contract must include an offer, acceptance, and valid consideration. *Howard v. Ferrellgas*, 92 F. Supp. 3d 1115, 1124 (D. Kan. 2015). Any conditions precedent to formation must be fulfilled. *M West, Inc. v. Oak Park Mall, LLC*, 44 Kan.App.2d 35 (2010). And, the parties involved in making the contract "must have the capacity to contract." *White v. Allied Mut. Ins. Co*., 29 Kan. App. 2d 797, 799 (Kan. Ct. App. 2001). If any of these elements are not met, an enforceable contract will not have been made. In the present case, an enforceable contract was not made between Plaintiff and Defendant as (1) there was no valid consideration, (2) a condition precedent to formation was not met, and (3) Plaintiff lacks capacity to contract.

### a. Defendant's Alleged Agreement Lacks Valid Consideration.

"An enforceable contract must be supported by consideration." *James Colborn Revocable Trust v. Hummon Corp.*, 55 Fan.App.2d 120, 408 P.3d 987 (Kan. Ct. App. 2017). Consideration is a performance or a return promise that is bargained for, meaning it was sought by the promisor in exchange for his promise, and is given by the promisee in exchange for that promise. *Raymond v. Spirit Aerosystems Holdings, Inc.*, No. 16-1282-JWB, 2018 U.S. Dist. LEXIS 211556, at \*63 (D. Kan. Dec. 17, 2018). However, if that promise "is prohibited because the performance, formation, or object of the agreement is against the law," then no enforceable contract can be made. *Petty*, 270 Kan. at 853. Indeed, this has been the law in Kansas for over 100 years. *See National Surety Co. v. Kansas City Hydraulic Press Brick Co.*, 73 Kan. 196, 206, 84 P. 1034 (1906) ("contracts are void which are repugnant to justice, or founded upon an immoral consideration, or which are against the general policy of the common law, or contrary to the provisions of any statute.").

In this case, Defendant argues that Plaintiff agreed to arbitrate his claims in exchange for access to Defendant's website. Doc. 20, Defendant's Motion, at p. 2. Even assuming that allegation is true, the purported consideration of access to chaturbate.com directly violates K.S.A. §§ 21-6401 and 50-6,146. Under Kansas law, illegal consideration cannot support a valid contract. Thus, because Defendant's offered consideration supporting the alleged agreement is invalid, a threshold requirement to contract formation has not been met. Accordingly, Plaintiff cannot be bound by Defendant's arbitration provision, as no contract could have been formed in the first place.

### b. Plaintiff is Unable to Satisfy Defendant's Condition Precedent for Formation of a Contract.

A condition precedent is simply "something that is agreed must happen or be performed before a right can occur to enforce the main contract." *M West*, 44 Kan. App. 2d at 47. "Courts have recognized two types of conditions precedent: conditions precedent to performance under an

existing contract and conditions precedent to the formation of a contract." *Id*. at 47. "Conditions precedent to performance under an existing contract arise from the terms of a valid contract and define an event that must occur before a right or obligation matures under the contract. In contrast, conditions precedent to the formation of a contract involve issues of offer and acceptance which precede and determine the formation of a contract." *Id*.

In the present case, no contract could have been made between Plaintiff and Defendant as a condition precedent to Defendant's offer/Plaintiff's alleged acceptance was not met. Namely, Plaintiff was not 18 years of age or older. Defendant, through Chaturbate's Terms, has expressly conditioned access to their website on (1) a user agreeing to their terms and conditions, and (2) that user being 18 years of age or older. *See* Doc. 1, Plaintiff's Complaint, at ¶ 31, displaying a picture of Defendant's terms and conditions stating: "YOU MUST BE OVER 18 AND AGREE TO THE TERMS BELOW BEFORE CONTINUING." Clearly, Chaturbate's Terms require a user to be above the age of 18 before an agreement may be reached concerning access to chaturbate.com.

Indeed, Defendant reiterates this condition in Section I of Chaturbate's Terms stating: "The Chaturbate.com platform is only open to consenting adults who have reached the greater of 18 years of age or the age of majority in their jurisdiction . . . If you have not yet attained the Age of Majority, you must immediately leave this site now." Doc., 20-1, Defendant's Ex. 1B, p. 1. And again, in Section IV, which is titled "NO ACCESS BY MINORS AND NO EXPLOITATION OF MINORS" and holds "This Platform is for Adults Only." *Id*. at p. 2.

Clearly, Chaturbate's Terms relay a condition precedent to formation that requires a user to be over the age of 18. Plaintiff is a minor. *See* Doc. 1, Plaintiff's Complaint, at ¶ 1. Thus, a

condition precedent to formation required by Chaturbate's Terms has not been satisfied, and no enforceable contract has been formed.

### c. Plaintiff Lacks the Mental Wherewithal to Understand in a Reasonable Manner the Nature and Effect of any Alleged Agreement in this Matter.

Under Kansas law, contracts entered into by minors are generally voidable. *See* K.S.A. § 38-102. However, this statute coexists with the broader principle that a person will lack capacity to contract if they do not have the "mental wherewithal to understand in a reasonable manner the nature and effect of the agreement." *Moore v. Moore*, 56 Kan. App. 2d 301, 317, 429 P.3d 607 (2018). Recognizing that minors typically lack the same level of understanding as adults, Kansas law "treats minors as persons under legal disability." *Combined Ins. Co. of Am. v. Langdon*, No. 24-1105-DDC-ADM, 2025 U.S. Dist. LEXIS 31279, at *4 (D. Kan. Feb. 21, 2025); *see also* K.S.A. §§ 60-217(c), 60-508(a). Thus, this fact should be instructive to the Court in determining whether a minor is bound by an agreement. *In re Estate of Wise*, 20 Kan. App. 2d 624, 632, 890 P.2d 744 (1995).

Q.R. was a 14-year-old minor child when he repeatedly accessed chaturbate.com. Doc. 1, Plaintiff's Complaint, at ¶ 1. Like any 14-year-old, he was wholly unfamiliar with the concept of arbitration, and has no understanding of what it might mean to waive his right to litigate any possible claim he may have in connection to accessing chaturbate.com. Rather, Q.R. was overwhelmed with, and preoccupied by the fact that he was able to access a hardcore pornography website where he was exposed to harmful content. Obviously, at the time he allegedly agreed to Chaturbate's Terms, he lacked the mental wherewithal to understand in a reasonable manner the nature and effect of any alleged agreement. Accordingly, no enforceable contract was made.

Thus, for the above reasons, this Court must DENY Defendant's Motion to Dismiss as several essential elements to contract formation have not been met, and no enforceable agreement has been formed.

## IV.    Plaintiff Has Disaffirmed any Alleged Agreement by Filing this Action.

Even assuming arguendo that an enforceable agreement has been formed between Plaintiff and Defendant, Plaintiff has disaffirmed any such agreement by filing this action through his mother. Under Kansas law, "[t]he filing of the action by the minor is equivalent to and implies disaffirmance of the arbitration provision of the contract." *Dickson v. Hoffman*, 305 F. Supp. 1040, 1044 (D. Kan. 1969). In *Dickson*, the court rejected an insurer's attempt to compel arbitration against a minor who had filed suit, holding that Kansas law does not permit minors to be bound by arbitration provisions, and that disaffirmance may be implied from the minor's act of filing suit. *Id*. The court further relayed "[a]n agreement by an infant to submit a controversy, whether present or future, to arbitration is not enforceable against an infant," and that public policy in Kansas, as reflected in K.S.A. § 38-102, supports a minor's right to avoid contractual obligations, especially those that restrict access to judicial remedies. *Id*. at 1043 - 44.

Here, by initiating this action through his mother, Plaintiff has clearly invoked his right to disaffirm any alleged arbitration provision. That alone is sufficient to render the clause unenforceable and requires this Court to DENY Defendant's Motion to Dismiss.

## V.    Whether an Enforceable Agreement to Arbitrate Exists is a Question for This Court, not an Arbitrator.

Before compelling arbitration on any issue, including arbitrability, courts must first determine whether an enforceable agreement to arbitrate was ever formed. As the Supreme Court explained in *First Options of Chi., Inc. v. Kaplan*, "[t]he question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." 514 U.S. 938, 943 (1995).

If the parties did not agree to delegate that question to the arbitrator, "then the court should decide that question . . . independently." *Id.* Later, in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, the Court reaffirmed this precedent, holding that "**courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue**." 561 U.S. 287, 299 (2010) (emphasis added).

The Tenth Circuit has adopted the same approach. In *Brayman v. KeyPoint Gov't Sols., Inc.*, the court explained, "A court addressing a motion to compel arbitration therefore must first determine whether there exists an enforceable agreement to arbitrate." 83 F.4th 823, 832 (10th Cir. 2023) citing *Granite Rock*, 561 U.S. at 299 - 300. Indeed, as then-10[th] Circuit Court of Appeals Judge Gorsuch unmistakably explained in *Howard v. Ferrellgas Partners, L.P.*:

> Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated. While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs.

748 F.3d 975, 977 (10th Cir. 2014).

Kansas courts follow the same rule: "there must first be a valid agreement between the parties" for arbitration to be enforced. *Hague v. Hallmark Cards, Inc.*, 48 Kan. App. 2d 118, 121, 284 P.3d 369 (2012) (citing *Granite Rock*, 561 U.S. at 299).

Here, Defendant asserts that "[n]o remaining issues need to be decided for the Court to dismiss Plaintiff's Complaint or to compel arbitration of Plaintiff's claims because the parties here *agreed* to submit all issues of arbitrability to the arbitrator." Doc. 20, Defendant's Motion, at p. 8 (emphasis added). But this assertion is flawed. It improperly assumes that a valid and enforceable

agreement to arbitrate exists between Plaintiff and Defendant. Indeed, before arbitration on any issue can be compelled, this Court must resolve whether an enforceable agreement has been reached. As detailed in Sections II, III, and IV of this Response, no valid or enforceable arbitration agreement was ever formed between the parties. Without such an agreement, arbitration cannot be compelled. Accordingly, this Court must DENY Defendant's Motion.

## VI.     Plaintiff's Alternative Motion to Stay Pending Arbitration.

In the alternative, should the Court be inclined to grant Defendant's Motion, Plaintiff respectfully requests that the Court stay this action rather than dismiss it. A stay would preserve the Court's jurisdiction and ensure that any arbitral award in Plaintiff's favor may be enforced without the need to initiate a separate proceeding.

## VII.     Conclusion

For the above reasons, Defendant's Motion to Dismiss must be DENIED.

/s/Joshua W. Ruhlmann
Michael J. Wyatt        (#23260)
Joshua W. Ruhlmann  (#29778)
MANN WYATT TANKSLEY
201 E. 1st Ave.
Hutchinson, KS  67504-1202
(620) 662-2400
(620) 662-2443 (Fax)
mike@mannwyatt.com
josh@mannwyatt.com

-and-

Benjamin W. Bull*
Christen M. Price*
Victoria Hirsch*
Khari James*
NATIONAL CENTER ON
SEXUAL EXPLOITATION
1201 F St., NW, Suite 200
Washington, DC 20004
P: 202-393-7245

bbull@ncose.com
cprice@ncoselaw.org
vhirsch@ncoselaw.org
kjames@ncoselaw.org

*Admitted via pro hac vice

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2025, the foregoing Motion was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

GM LAW PC
Jason M. Hans KS #18881
1201 Walnut Street, 20th Floor
Kansas City, MO 64106
Telephone: (816) 471-7700
Facsimile: (816) 471-2221
jasonh@gmlawpc.com

-and-

WAYMAKER LLP
Jaime W. Marquart (admitted via pro hac vice)
515 S. Flower Street, Suite 3500
Los Angeles, CA 90071
Office: 424.652.7800
Fax: 424.652.7850
jmarquart@waymakerlaw.com

*Attorneys for Defendant MultiMedia, LLC*

 */s/ Joshua W. Ruhlmann*
Joshua W. Ruhlmann (#29778)