IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Q.R., a minor, by and through his natural mother and next friend, JANE DOE,**<br><br>Plaintiff,<br><br>v.<br><br>**MULTI MEDIA LLC, et. al.,**<br><br>Defendants. | Case No.  6:25-cv-01094-HLT-BGS |

**MEMORANDUM & ORDER**

Q.R. completed the account signup process on Defendant Multi Media, LLC's platform when he was 14 years old.[1] The signup process required him to select a username and password, provide his email address, and input his date of birth, which he falsified. Q.R. then agreed to the terms and conditions, created an account, and accessed and viewed "content harmful to minors." Plaintiff contends that Defendant's platform violates Kansas law because it does not comply with Kansas's age verification standards for such websites. Defendant moves to compel arbitration because the platform's terms and conditions include an arbitration provision with a delegation clause. Doc. 19. The Court agrees with Defendant, grants the motion, compels arbitration, and stays the case.[2]

**I.    BACKGROUND**

Defendant operates the chaturbate.com website platform. Q.R. visited the platform and completed the account signup process including an express acceptance of the platform's "Terms

---

[1]   Plaintiff voluntarily dismissed Defendant Doe. Doc. 33.

[2]   Defendant's motion is styled as a motion under Rule 12(b)(6) to dismiss or in the alternative to compel arbitration. The Court need only address the alternative relief requested. In that event arbitration is appropriate, courts must compel arbitration and stay the case. *See Smith v. Spizzirri*, 601 U.S. 472, 477-78 (2024).

& Conditions." Q.R. selected a username and password, provided his email address, and inputted a false birth date. Q.R. then selected the checkboxes next to "I have read and agree to the terms and conditions" and "I have read and agree to the privacy policy" before clicking the "Create Free Account" button.[3] Section IX(g) of the platform's terms and conditions contains an arbitration provision specifying that "any dispute relating to or arising out of" use of the platform "will be resolved by binding individual arbitration." The arbitration provision further states that the arbitration will be conducted by the American Arbitration Association ("AAA") in accordance with its rules. Rule R-7(a) states "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."

## II.   ANALYSIS

Defendant moves to compel arbitration based on the arbitration clause in its platform's terms and conditions. Plaintiff opposes the motion and asserts that the platform's terms and conditions are not binding for a variety of reasons. The Court finds that there is an arbitration agreement. It also finds that this arbitration agreement includes a delegation clause by incorporating the AAA arbitration rules. The merits of the dispute and most of the arguments concerning the dispute's arbitrability are for the arbitrator to resolve. The Court therefore compels arbitration, grants the motion, and stays this case.

### A.   ANALYTICAL FRAMEWORK

Arbitration is "a matter of contract," and arbitration agreements are therefore "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

---

[3]  The words "terms and conditions" on this account creation pop-up box are highlighted in blue, which indicates that these words contain a hyperlink.

2

of any contract." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147-48 (2024) (internal quotations and citations omitted).[4]

Courts use a summary-judgment-like standard when deciding motions to compel arbitration. The moving party must demonstrate the absence of a genuine issue of fact about whether an agreement between the parties to arbitrate exists. *Hancock v. AT&T*, 701 F.3d 1248, 1261 (10th Cir. 2012). Genuine factual disputes are not created by a nonmoving party's purely conclusory allegations or assertions that lack support in the factual record. *Braden v. Optum RX, Inc.*, 2021 WL 5299402, at *1 (D. Kan. 2021).

In any arbitration dispute, "the first question" is always "[w]hat have the[] parties agreed to?" *Coinbase, Inc.*, 602 U.S. at 148. The district court must determine "whether a valid arbitration agreement exists" before it can "refer[] a dispute to an arbitrator." *Id.* at 149 (internal quotations and citation omitted). Even so, the issues the parties can choose to send to an arbitrator is flexible. Parties can agree to send only a dispute's merits to an arbitrator. Or they can agree through a delegation clause "that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* at 148 (internal quotations and citation omitted). The district court does not "assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 149 (internal quotations and citation omitted).

Importantly, not all arbitrability issues can be delegated. Instead, "[t]he issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contain[s] a delegation clause or whether one of the parties specifically challenged such a clause." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100,

---

[4] The parties seem to agree that Kansas contract law applies. Doc. 20 at 6; Doc. 31 at 2-3.

1105 (10th Cir. 2020) (citations omitted); *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (Easterbrook, J.) ("Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate . . . But, if there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator . . . ."); *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022) ("Courts have the authority to adjudicate formation challenges—even if there is a delegation clause—unless the parties have clearly and unmistakably referred formation issues to arbitration in a written contract whose formation is not in issue."). The district court therefore decides whether an agreement to arbitrate was formed in the first instance.

### B.     APPLICATION

Plaintiff contends she should not be compelled to arbitrate for several reasons. Some of her arguments go to formation (which the Court must decide) and other arguments go to threshold arbitrability and merits issues (which the arbitrator must decide). The Court resolves her arguments as follows.

**Consideration and Condition Precedent.**  Plaintiff initially argues that a contract to arbitrate was not formed because there was no consideration and because a condition precedent to contract formation was lacking. She argues that there was no consideration for Q.R.'s promise to arbitrate because his access to Defendant's website violates Kansas law and is invalid consideration. And she argues that Q.R. was not over 18 years old as required by the platform, so he was unable to satisfy Defendant's condition precedent to contract formation. The Court must resolve the arguments because they challenge whether an agreement to arbitrate was even formed.[5]

---

[5]   Section 2 of the FAA "establishe[s] the rule of severability, which means that an arbitration clause within a contract is severable from the remainder of the contract. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Fedor*, 976 F.3d at 1105 (internal quotations and citations omitted). This rule of severability doesn't overcome

4

But when these arguments are assessed through the correct analytical lens, both are unpersuasive. The contract to arbitrate is supported by valid consideration: in exchange for Q.R.'s agreement to give up the right to litigate in court, Defendant agreed to do the same. And Q.R.'s age of majority was not a condition precedent to formation of the contract to arbitrate. *See Williams-Jackson v. Innovative Senior Care Home Health of Edmond, LLC*, 727 F. App'x 965, 968-69 (10th Cir. 2018) (noting that one party's "promise to arbitrate in exchange" for the other party's promise to do likewise "constitutes sufficient consideration to support the arbitration agreement" (internal quotations and citation omitted)). Neither agreement to the platform's terms and conditions generally nor Q.R.'s agreement to arbitrate specifically was conditioned on Q.R.'s age. Rather, the requirement that Q.R. be over the age of 18 to access the platform was a term that Q.R. agreed to for using the site.

**Capacity to Contract.** Plaintiff next argues that Q.R. lacked the capacity to agree to arbitrate. Plaintiff argues Q.R. lacked the ability to understand what rights he was giving up by agreeing to arbitrate and that his exposure to Defendant's platform's content played a role. Plaintiff's capacity argument also presents a formation issue. It is thus an issue for the Court to decide because it concerns whether <u>any</u> agreement to arbitrate existed, including an agreement to arbitrate threshold questions of arbitrability. *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003) (concluding that the district court, rather than the arbitrator, properly resolved the plaintiff's lack-of-capacity challenge to an arbitration agreement because "a mental capacity challenge can logically be directed only at the entire contract" and goes to the agreement's formation).

The problem with this argument is that Plaintiff offers no supporting evidence. Under Kansas law, a person lacks capacity to contract "if he or she hasn't the mental wherewithal to

---

the Court's obligation to determine whether an agreement to arbitrate was formed in the first instance. *Id.* at 1105-06. The Court must still ask whether an agreement to arbitrate exists.

5

understand in a reasonable manner the nature and effect of the agreement." *Moore v. Moore*, 429 P.3d 607, 620 (Kan. Ct. App. 2018) (internal quotations and citation omitted). The burden belongs to the party arguing that he or she lacked capacity to contract to show that this was indeed the case. *See DeClue v. Gen. Motors Corp.*, 2000 WL 1472856, at *1-2 (D. Kan. 2000). The onus is on a party asserting lack-of-capacity to come forward with more than conclusory allegations. This party must provide competent medical or diagnostic evidence to demonstrate that such mental wherewithal was lacking. *Id.*

Plaintiff's argument that her child lacked the capacity to enter into an arbitration agreement is unsupported by any specific evidence.[6] It may very well be true that exposure to pornographic content from Defendant's platform created stress for Q.R. But no evidence of the incapacitating effects of that stress has been presented. It is also possible that Q.R. lacked an understanding of the litigation process sufficient to appreciate that resolving a claim through arbitration is different than litigating in court. But no evidence has been provided to suggest that Q.R. was <u>incapable</u> of reasonably understanding the difference. Plaintiff has therefore not shown that either the arbitration agreement or the delegation clause was invalid because of Q.R.'s lack of capacity. The Court only has Plaintiff's conclusory allegations. This is not enough. *Braden*, 2021 WL 5299402, at *1 (conclusory allegations are insufficient to create an issue of material fact sufficient to avoid arbitration).

---

[6] To the extent Plaintiff is arguing that a minor cannot form a contract, the Court rejects that view out of hand. K.S.A. § 38-102 instructs that minors are bound by the contracts they make unless they disaffirm them within "a reasonable time after the minor attains the minor's majority and restores to the other party" everything remaining in the minor's control that he received by dint of the agreement. The Kansas Supreme Court has interpreted this to mean "a minor's contract is never void, unless it is void for some other reason than minority" and that "[i]t can never be more than voidable for minority alone." *Ehrsam v. Borgen*, 347 P.2d 260, 263 (Kan. 1959). Infancy by itself, therefore, is a defense to a contract's enforceability. *See K.F.C.*, 29 F.4th at 837 (interpreting substantially similar Illinois law). Not its formation. *Id.* The Court therefore addresses Plaintiff's infancy argument as such and takes it up in the following section.

**Illegality and Infancy.** Plaintiff's remaining two arguments challenge the enforceability of the terms and conditions. Plaintiff argues that the terms and conditions are unenforceable as a matter of public policy because they amount to an illegal contract. And she argues that Q.R.'s status as a minor means that the terms and conditions are voidable, can be disaffirmed at Q.R.'s option, and Q.R. has elected to disaffirm them by filing the present suit.

These are contract-enforcement (or "validity") challenges. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 & n.1 (2006) (explaining that an argument that a contract is illegal goes to the issue of enforceability or validity and not to whether a contract was formed in the first instance). And because the arbitration agreement contains a delegation clause, unless Plaintiff's challenges are to the enforceability of the delegation clause specifically, the challenges are a question for the arbitrator to resolve:

> In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. Thus, [for instance,] in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone. But even where that is not the case—as in [the case] where alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of [the] challenge to be directed specifically to the agreement to arbitrate before the court will intervene.

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (emphasis added). So, while it is certainly the case that a delegation clause and the arbitration agreement containing it may be susceptible to the same enforceability challenges, only a challenge to a delegation clause that speaks specifically to the enforceability of that clause (rather than that clause as simply a part of the larger contract) need be resolved by a court. *Id.* at 70-72. Moreover, a "party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of

7

the challenge" and merely "recycl[ing] the same arguments that pertain to the enforceability of the agreement as a whole" is generally insufficient. *I.C. v. StockX, Inc.*, 19 F.4th 873, 885-86 (6th Cir. 2021).

This is a fine but important point because the arbitration clause at-issue contains a broad delegation provision. The terms and conditions state that "arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the Supplementary Procedures for Consumer-Related Disputes, and the Federal Arbitration Act." Doc. 20-1 at 23. AAA rule R-7(a) provides that "[t]he arbitrator" has the "power to rule on [its] own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Doc. 20-2 at 13. And AAA rule R-7(b) provides that the arbitrator has "the power to determine the existence or validity of a contract of which an arbitration clause forms a part," that "[s]uch an arbitration clause shall be treated as an agreement independent of the other terms of the contract," and that "[a] decision . . . that the contract is null and void shall not, for that reason alone, render invalid the arbitration clause." *Id.* The arbitration provision's incorporation of the AAA rules and the AAA rules' inclusion of language clearly and unmistakably delegates questions of arbitrability to the arbitrator. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281-84 (10th Cir. 2017) (incorporation of arbitration rules providing that disputes over the "formation, existence, validity, interpretation, or scope of the agreement" under which arbitration was sought clearly and unmistakably delegated the question of arbitrability to the arbitrator).

The existence of a delegation clause means that a successful argument about the validity (enforceability) of an arbitration agreement must be directed at the provision delegating the question of arbitrability to the arbitrator. Plaintiff's illegality and infancy arguments are not

8

directed at the delegation provision. Instead, Plaintiff makes generic and general challenges to the terms and conditions. These challenges are for the arbitrator to resolve, not the Court. *See StockX, Inc.*, 19 F.4th at 885-86 (finding that enforceability challenge to an arbitration agreement as well as its delegation clause due to infancy was for the arbitrator and not the court to resolve because the infancy challenge was insufficiently specific to the delegation clause).

### III.  CONCLUSION

The Court grants the motion to compel arbitration. The Court is satisfied that an arbitration agreement was formed. The remaining issues belong to the arbitrator to resolve.

THE COURT THEREFORE ORDERS that Defendant's motion to dismiss or in the alternative compel arbitration (Doc. 19) is DENIED IN PART and GRANTED IN PART. The Court GRANTS Defendant's motion to compel arbitration and STAYS THE CASE pending the arbitration's outcome. The parties are ordered to file a status report within ten days of the arbitration concluding or on August 10, 2026, whichever is sooner.

IT IS SO ORDERED.

Dated: February 10, 2026                         /s/ *Holly L. Teeter*
                                                         HOLLY L. TEETER
                                                         UNITED STATES DISTRICT JUDGE